On May 31, 1946, at about 3:30 P.M., a collision occurred between an automobile driven by the minor son of defendant, Blanche Dier, and a bicycle being ridden by Richard Jamison, Jr., the minor son of the plaintiff herein. The collision occurred in East Baton Rouge Parish, at the northwest corner of the intersection of Evangeline Drive, formerly known as North Highland Drive, a paved street running east and west, and Walnut Street, a street running north and south, gravelled on the north of Evangeline Drive. The petition alleges that the minor son of defendant was driving an automobile west on the right-hand side of Evangeline Drive and that the plaintiff's minor son was riding his bicycle on the north side of said Evangeline Drive, to the right and north of the paved portion thereof, and that the bicycle was struck by the automobile throwing Richard Jamison, Jr., into the ditch on the right of the north side of the street, causing serious and permanent personal injuries to him; that the collision was caused entirely by the gross negligence of the driver of the automobile and specifically (a) in failing to keep a proper lookout, (b) in driving the automobile along the extreme north side with the right part of the automobile extending over onto the shoulder, (c) in failing to see the Jamison boy on his bicycle on the right side when he should have seen him, or having seen him, failing to avoid striking the bicycle, (d) in failing to avoid striking young Jamison and continuing on his way after striking him without making any effort to stop until someone yelled to him, (e) that the driver of the car did not have the car under his control or by his inexperience did not know how to avoid striking the Jamison boy, (f) in operating an automobile at a dangerous and reckless rate of speed and without keeping a proper lookout. Petitioner alleges that as a result of the accident petitioner's minor son has suffered damage for injuries, disability, pain and suffering, etc., in the amount of $5,000, and that petitioner, as father of the minor son, has suffered damage in the amount of $318.05; $25 for damage to the bicycle and the remainder for hospital and medical expenses.
The answer is to the effect that the accident was caused solely by the petitioner's minor son, Richard Jamison, Jr., in entering the intersection of Walnut Street and Evangeline Drive without keeping a proper lookout and with disregard of the traffic *Page 866 
thereon; that the driver of the automobile was driving in a careful and proper manner and was free from any negligence whatsoever, and that the accident was caused by plaintiff's minor son in running into defendant's automobile. In the alternative, the defendant pleads that if any negligence is found on the part of his minor son, which is denied, it should be found that plaintiff's minor son was guilty of contributory negligence which was a proximate cause of the accident and which bars recovery herein.
After due hearing of the case the District Court, without assigning any written reasons, dismissed the case at plaintiff's costs and plaintiff has appealed.
[1] The case involves questions of fact only and it is fundamental that the judgment below should not be reversed unless manifest error is found in the conclusion of facts of the trial judge. Since the trial judge has not submitted written reasons, we are unable to tell what specific conclusions he reached, but, since the testimony is highly contradictory and irreconcilable, it is obvious that he must have believed the defendant's witnesses.
On the question of liability the plaintiff's case is based on the testimony of Richard Jamison, Jr., Willie Lemings, Edwin Whitaker, Robert Haley and Mrs. E.E. Vick.
Richard Jamison, Jr., a 12-year boy, testified that prior to the accident he left his home on the south side of Evangeline Drive, a distance of about a block and a half from the scene of the accident, there being one intersecting street besides Walnut Street between his home and the scene; that he travelled west on Evangeline Drive and went over to see his friend, Jerry Vick, another little boy who lived on the north side of Evangeline Drive about 200 feet West of Walnut Street; that when he arrived at the Vick house he knocked and found that no one was there, and thereupon turned back and went to the Lambert store located on the southeast corner of the intersection of Evangeline Drive and Walnut Street; that the said Lambert store faces north and has a shed in front, with gasoline pumps on the front thereof; that at this store he met two of his friends, Edwin Whitaker, bearing the nickname of "Honky," and Robert Haley. He states that besides "Honky" Whitaker and Robert Haley, that he saw Willie Lemings, who worked at the store, and also some other people. He testifies that he talked to young Whitaker and young Haley for some five minutes and that he thereupon decided to go back to the Vick home; that during his conversation with the other two boys they sat on boxes underneath the shed and he sat on his bicycle; that as he left the store he rode out on the cast side of the shed and then across over to the north of Evangeline Drive and was riding on the north or right-hand side of said Drive, having gone about eleven yards on the north side after crossing Evangeline Drive, when he was struck by the automobile and thrown in the ditch at the northwest corner of the intersection of Walnut and Evangeline Drive. He states that he arrived at the figure of 11 yards by having stepped off on the morning of the trial from the point where he started west on the north side of Evangeline Drive to the point of contact.
Young Haley and young Whitaker corroborated the Jamison boy's testimony with reference to his visit at the Lambert store, but their testimony as to how long he stayed there is uncertain and indicates that he was under the shed for a period of much longer than five minutes, or approximately half an hour. They both testified that he left the shed on the cast side and circled into Evangeline Drive towards the north side, but neither saw the actual accident and neither saw the Dier automobile until after the accident. They both testified that the bicycle and the boy were thrown on the north shoulder of Evangeline Drive some few feet from the western edge of Walnut Street.
Lemings, a young man who was working for the Lambert store, testified that he was standing underneath the shed, near the pumps, talking to a Mr. Kohler (defense witness) at the time of the accident for approximately a half hour before; that as he came out of the store he saw young Jamison sitting on his bike talking to Whitaker and Haley, who were sitting on boxes; *Page 867 
that young Jamison left the shed and rode to the north side of Evangeline Drive, and as he was proceeding west thereon, the Dier automobile approached from the east on the south side of Evangeline Drive and turned to the north side thereof, apparently because a bus was coming from the opposite direction about half a block away, and that shortly thereafter the Dier automobile struck the bicycle, either on the rear or left side of said bicycle and continued to go on a distance of about 120 feet; that the driver of the automobile stopped when he, Lemings, and Mr. Kohler yelled at him; that he and Kohler went to the scene, and, as he lifted the bicycle off of young Jamison, Mr. Kohler picked up the boy and took him to the Dier automobile, which had in the meantime backed close to the scene. Lemings states that he laid the bicycle aside and opened the front door of the automobile to assist Kohler in placing the boy therein; that the automobile was a two-door sedan and that it was occupied on the front seat by young Dier at the wheel, and Mrs. Dier, his mother, next to him, and that in order to get the boy inside on the back seat it was necessary for Mrs. Dier to push forward and have the folding seat moved forward. Lemings testified further that after Kohler placed the boy on the back seat, he shut the door and went back to the store, and that he, Lemings, picked up the bicycle and carried it to the shed; Lemings also testified that the bus driver was coming out of the store when he arrived there and that he asked him where the Jamisons lived, and that he, Lemings, told him he was going there, and the bus driver agreed to drop him at the Jamison house.
Mrs. E.E. Vick testified that she lived on the north side of Evangeline Drive approximately 200 feet west of Walnut Street; that when the collision took place she was standing on the porch of a Mrs. Norman, who lived next door to her house on the cast. She states that she had gone to Mrs. Norman's house to inform her of an accident in which Mrs. Norman's daughter had been involved, and that she had been on the porch about half an hour before the accident and that when the accident occurred she was facing east and was with Mrs. Norman's son and her own son, who were also on the porch, but did not witness the accident because they were facing west. She states that she saw the Jamison boy sitting "on a box or something" and saw Willie Lemings talking to a man in front of Lambert's store and that she saw the Jamison boy get on his bicycle and leave; that he crossed over the Drive and went west, and that he was struck by the car as he was crossing Walnut Street on the north side of Evangeline Drive.
The defense is based on the testimony of Mr. Kohler, the man who was standing in front of the Lambert store, Mr. Brown, the bus driver, Mr. Blanche Dier, Jr., the son of the defendant, Mrs. Blanche Dier, and Jesse Dier, the defendant's minor son, and driver of the Dier automobile.
Mr. Kohler testified that he was an insulation man for the General Gas Carporation and had been living for 15 years on Bradley Lane near the Air Base; that on the day of the accident, he was returning from work on a bus and that he got off at Lambert's store where he inquired about a Mr. Landry and that a young fellow (presumably Lemings) told him where Landry lived; that he thereupon went to Landry's home, and not finding him there, he returned to the Lambert store to catch a bus; that he was standing on the Lambert porch across from where the accident happened; that he stood there some 20 or 30 minutes and that he saw the accident; that young Jamison was coming on a bicycle heading south on Walnut Street, and that, in effect, he ran into the automobile. He states that he did not see the actual impact because the Dier automobile was between him and the bicycle, but by his observation he reconstructs the accident to the effect that the bicycle ran into the side of the automobile. He denies that the Lemings boy was anywhere around, stating that he had gone out to deliver groceries, and also denies either young Jamison or Whitaker or Haley were underneath the shed as testified by them. He states further that the Dier automobile drove only about 20 or 25 feet after the collision, and that he was the first to arrive at the *Page 868 
scene; that he found the bicycle laying on top of the boy; that the boy's leg was tangled up between the sprocket wheel and the arm; that he picked up the boy and put him in the back part of the car; that the lady in the car asked him if he could find the boy's mother, and that he said he did not know her. He testified further that the only occupants of the car were the young boy driver and the lady, and that there was no one in the back of the car. It may be noted that Lemings in his testimony stated that when he saw the Dier car pass by the Lambert store it was occupied by people in the front and in the back. Kohler further testified that he picked up the boy at the spot about 10 feet from the ditch on the west side of Walnut Street on the north side of Evangeline Drive. He emphatically denies having been accompanied to the scene by Lemings or having hollered to the driver of the Dier car to stop.
Gilbert Brown, the bus driver, testified that he did not actually see the collision, but was at the scene; that he had stopped at the Lambert store to discharge some passengers; that it was raining and the road was very wet and that his windshield was not clean and therefore he could not see anything until after the accident; that he thought he knew the boy on the bicycle and therefore he went to the car and that the driver asked him to notify the Jamison family; that he thereupon made inquiry at the Lambert store about the location of the Jamison home and that he found out from Lemings, and took Lemings there to notify the Jamisons. He states further that the automobile, when he arrived at the scene, was parked just west of Walnut Street, and that at that time the injured boy was on the back seat, and he was informed was to be taken to the hospital; that there were no people around the car, but there were 10 or 15 people at the Lambert store across the way.
Blanche Dier, Jr., testified that he was 22 years of age, a licensed Minister of the Gospel (Istrouma Baptist Church) attending L. S. U., and that he and his mother went to the Lambert store the morning after the accident and spoke to young Lemings about the accident. He states "I asked Lemings if he saw the accident, and he said 'Oh, no, I could not see the accident because it was on the opposite side of the street from me and it was raining.' " He further states that Lemings told him that the Jamison boy was coming out of the street, which is north of Evangeline Street; that he was riding his bicycle south on that street. It might be noted that it was shown that Lemings was subpœnaed by the plaintiff and not by the defendant.
Mrs. Blanche Dier testified that at the time of the accident she was riding next to her son Jesse Dier, who was driving the automobile; that at the time of the accident her son was not quite 18 years of age. She states, in effect, that they were driving on the north side of Evangeline Drive, heading west and that just as they were about to pass Walnut Street something hit the car in the back; that, in effect, the bicycle ran into the side of the automobile. She states that some man put the boy in the back seat of the car and that she and her son took him to the Lady of the Lake Hospital. She states that after the man put the hurt boy in her car, he closed the door and left and that the only other person who came to the car was the bus driver. She is positive that Lemings did not come to the scene. She states further that on her way to the hospital the injured boy told her that he was coming out of the street, it was raining, and he was in a hurry and he had slipped off from home and he had asked his mother if he could go to the picture show and she told him he could not and he said he was coming out of that street and has chain slipped and he could not stop. He said "I had to hit you."
The testimony of Jesse D. Dier was taken by deposition, and the sum and substance of his testimony is in corroboration of his mother's testimony. He states that he was driving along at about 20 or 25 miles per hour and that it was raining pretty hard and that he was keeping a close lookout; and that just as he got to this little road (Walnut Street) this little boy hit the side of the car; that young Jamison, the little boy, told him that his chain slipped and that is why he hit. He *Page 869 
states that the car did not strike the bicycle but that the bicycle struck the car on the right side between the right front fender and the right rear fender just about where the door closes, and that the accident occurred on the north side of Evangeline Drive, at Walnut Street. He states further that he was driving on the right-hand side of Evangeline Drive; that he did not see the boy on the bicycle coming and that he could not have turned to his left immediately before the collision because he was meeting the city bus coming from the opposite direction.
[2] As stated before, it is very evident from a review of the testimony that two irreconcilable versions of the accident are created, one by the testimony of the witnesses of the plaintiff, and the other by the testimony of the witnesses of defendant. It may be noted that the bicycle involved in the accident was produced in evidence and that the damage to the bicycle is on its right side, which would seem to corroborate the version that the bicycle ran into the car as he was trying to swing around the back thereof, instead of the car having struck in the rear or on the left of the bicycle. In any event, it does not appear that the plaintiff has proved that the accident was caused by the sole negligence of young Dier. To reach such a conclusion we would have to disregard entirely the testimony of Mr. Kohler, as well as Mrs. Dier and her young son, and the physical facts, and we would have to accept at full value the testimony of young Jamison, Whitaker, Haley, Lemings and Mrs. Vick. As to the testimony of young Jamison, it may be observed that while he states he went over to the Vick's home to see Jerry Vick, he admits that he failed to see Mrs. Vick standing on the front porch of Mrs. Norman's house, directly east of the Vick home on the same side of Evangeline Drive. Either Mrs. Vick was mistaken in stating that she was at that place at that time, or young Jamison did not go to the Vick home as he said he did. It may also be observed that on cross-examination young Vick admitted that "Honky" Whitaker and his two brothers lived on Walnut Street, north of Evangeline Drive; and that in visiting the Whitaker home he usually traveled north on Walnut Street. There is no proof that he took that route that day, but there is some basis for believing the testimony of the witnesses that he had been on Walnut Street and was travelling south with the idea of crossing Evangeline Drive at the time of the acident.
In any case, from the contradictory evidence adduced at the trial we cannot find any manifest error at the obvious conclusion of the trial judge that plaintiff has failed to sustain the burden of proof. We must therefore affirm the judgment.
For these reasons the judgment appealed from is affirmed.